UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **KELSEY JOHN BENOIT** | **CIVIL ACTION NO. 06-1920** |
| **VS.** | **SECTION P** |
| **MURIEL CUNNINGHAM, ET AL** | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on October 23, 2006, by *pro se* plaintiff Kelsey Benoit. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Allen Correctional Center (ACC), Kinder, Louisiana, and complains, among other things, that he has received inadequate medical attention while at ACC. Plaintiff names the following as defendants herein: ACC Warden Terry Terrell; ACC Medical Personnel Muriel Cunningham, Ramin Shahla, M.D., and "John Doe" M.D.; ACC Corrections Officers James Kirklin, Tommy Davis, and Terry Langley; ACC Health Services Administrator Nelda Wilson; LDOC Secretary Richard Stalder; and, Global Expertise in Outsourcing, Inc. (GEO) and its employee David Mustang. He prays for various injunctive relief, punitive damages, and to have the court "subject Terry Terrell, Nelda Wilson, Tommy Davis, James Kirklin, and the GEO Group, Inc. to civil penalties for their negligent acts."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the civil rights complaint be **DISMISSED WITH**

**PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted.

## Statement of the Case

Plaintiff's factual allegations may be summarized as follows:

Plaintiff was transferred to ACC on February 27, 2006. The documents provided by plaintiff show that some six months prior to his arrival at ACC, he was diagnosed with Schizoaffective Disorder, Bipolar Type; Tourette's Syndrome; Personality Disorder; and, Diabetes, Seizure Disorder. [Doc. #1-3, p. 25]. The diagnosis was made by Dr. Ramin Shahla while plaintiff was "in society." [Doc. #1-3, p. 25]. At that time, plaintiff was prescribed various medications.

Upon his arrival at ACC, plaintiff states that he informed medical personnel of his medical history. Despite this information, plaintiff claims that he went three days without medication. Thereafter, plaintiff was seen by Dr. Shahla on March 3, 2006. At that time, Defendant Shahla "prescribed some unknown medication... " [Doc. #1-1, p. 3]. Plaintiff was again examined by Defendant Shahla on March 6, 2006, and was "eventually given medication to treat bi-polar disorder and hypertension." [Doc. #1-1, p. 4]. Plaintiff alleges that during the early part of July 2006, an unidentified ACC contract physician (referred to by plaintiff as defendant John Doe) discontinued his hypertension medication. Following this, on October 2, 2006, defendant Shahla prescribed a seizure medication for plaintiff to treat an increase in the number of seizures that he was experiencing. Plaintiff's also states that he was again seen by Dr. Shahla on December 25, 2006. At that time, defendant Shahla denied plaintiff's request for medication.

On December 29, 2006, plaintiff saw ACC psychologist Wakefield (referred to by plaintiff as John Doe #2) in reference to obtaining counseling for his eating disorder. Plaintiff

claims that Wakefield told him that he would look in to the matter but that Dr. Shahla "had already decided that at this facility, (he) does not have an eating disorder... and that it was already decided what was going to be done." [Doc. #10, p. 1]. Plaintiff was again seen by a mental health professional (Randy Pollard) in January 2007, who assured him that he would be placed on the medical call-out for therapy to treat his eating disorder. However, Pollard told plaintiff that it might take months for him to see a psychologist, and even then, the psychologist might not conduct the therapy sessions. Plaintiff also claims that Pollard said that he was the only inmate at ACC with an eating disorder, and as such, the prison did not have to make special provisions. [Doc. #15, p. 7]. Despite his requests, plaintiff alleges that, at the time of filing this suit, he had not received medication or counseling for his eating disorder.

      Plaintiff's final claim is that subsequent to filing this matter, he received eight disciplinary violations for incidents in which he was not involved, and that all of his medications, except for the mental health medications, had been stopped. [Doc. #8-1, p. 8].

## Law and Analysis

**Frivolity Review**

      When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights

complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and the exhibits submitted along with the complaint, provide a detailed description of the facts relied upon to support his specific theories of liability. Therefore, the court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that he has

failed to state a claim for which relief may be granted and accordingly recommends dismissal of the complaint.

**Medical Care Claims**

Plaintiff's claims of delayed, denied, or inadequate medical care are without merit. Medical care claims asserted by prisoners are analyzed under the Eighth Amendment. In order to succeed on a medical care claim such as plaintiff's herein, he must establish the defendants, in each instance, were "deliberately indifferent" to his serious medical condition. It is only this deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia*, 96 S.Ct. 2909 (1976); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* **A plaintiff's disagreement with the course of treatment offered by the medical staff and/or unsuccessful treatment do not establish that a constitutional violation has occurred**. *See Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). In addition, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra.*

Furthermore, the existence of continuous medical care normally precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235(5th Cir. 1995); *Mayweather, supra.* Plaintiff admits and his pleadings demonstrate, that he had many medical appointments subsequent to his transfer to ACC. The evidence also shows that plaintiff was prescribed various medications during this time. It is also interesting to note that Dr. Shahla treated plaintiff before and after his transfer to ACC. Thus, plaintiff had the benefit of continuous treatment by the same doctor–one that was familiar with his medical conditions. Plaintiff's allegations, at most, state a disagreement between himself and the medical care providers regarding the procedures to treat his medical problems. As such, there is no basis for finding that the defendants have acted with deliberate indifference to plaintiff's serious medical needs. Plaintiff's claims do not establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. See *Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct. 1800 (1974). The decision regarding plaintiff's treatment is best left to the prison officials. Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**Retaliation**

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the Constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). However, as the Fifth Circuit has repeatedly emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Woods v. Smith*, 60 F.3d at 1166. To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

Plaintiff claims that the issuance of disciplinary violations and the suspension of certain medications were acts of retaliation against him; however, he fails to offer anything more than conclusory allegations in support of this claim. As previously stated, conclusory allegations of retaliatory motive or intent are not sufficient to evidence a pattern of retaliation or motive for

7

same. In the present case, plaintiff's allegations of retaliation are insufficient to state a claim under this cause of action. For this reason, plaintiff's claim for retaliation should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights claims against the defendants be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(I) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED**, in Chambers, at Lake Charles, Louisiana, this 16th day of April, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE